UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| NORRIS G. HOLDER, JR., <br><br> *Petitioner*, <br><br> v. <br><br> STEVEN KALLIS, Warden, <br> USP Terre Haute, <br> and <br> UNITED STATES OF AMERICA, <br><br> *Respondents*. | Case No. 2:22-cv-212 <br><br> **DEATH PENALTY CASE** |

# PETITION FOR WRIT OF HABEAS CORPUS
# PURSUANT TO 28 U.S.C. § 2241

LISA G. PETERS
FEDERAL PUBLIC DEFENDER

By

Nadia Wood,
Assistant Federal Public Defender

Office of Federal Public Defender for
the Eastern District of Arkansas
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201

Phone: (501) 324-6114
Fax: (501) 324-5630
Nadia_Wood@fd.org

*Counsel for Norris G. Holder, Jr.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ..............................................................................ii

TABLE OF AUTHORITIES..........................................................................iii

INITIAL STATEMENT REGARDING JURISDICTION ................................. 1

INTRODUCTION AND OVERVIEW OF PETITION ..................................... 1

PROCEDURAL HISTORY ..........................................................................4

    1.  Conviction and sentencing.................................................................... 4

    2.  Direct appeal. ...................................................................................... 5

    3.  Initial § 2255 motion............................................................................ 5

    4.  *Johnson v. United States* and first successor § 2255 application. ......... 6

    5.  *United State v. Davis* and second successor § 2255 application. ........... 7

    6.  *Borden v. United States* holds that a crime of violence requires  the intentional or knowing use of force, opening the door to  this petition................. 7

REASONS WHY THE WRIT SHOULD BE GRANTED ..................................9

    I.     This Court has jurisdiction under 28 U.S.C. § 2241 because *Borden* establishes that Mr. Holder is innocent of violating § 924(c) and 28 U.S.C. § 2255 is unavailable to correct his illegal conviction and death sentence. .............................................................................. 9

    II.    In light of *Borden,* Mr. Holder's § 924(c) conviction cannot be sustained because the least culpable way of committing federal  bank robbery under §§ 2113(a) and (e) does not require the knowing or purposeful use of, attempted use of, or threat to use strong physical force. ...............................................................................................11

        A.  Bank robbery by intimidation is not a crime of violence. .......................... 12

        B.  Post-*Borden,* other courts have held and the Government has conceded that crimes requiring only general intent to cause or threaten to cause physical harm are not crimes of violence. ..................... 14

        C.  Section 2113(e) does not require an intentional *mens rea* and can neither serve as an independent crime of violence nor elevate bank robbery to a crime of violence.................................................................17

        D.  Mr. Holder's death sentences must be vacated. ......................................... 19

CONCLUSION ........................................................................................ 23

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agofsky v. Watson,*
No. 2:22-cv-49-JRS-DLP (S.D. Ind.) ............................................................ 9

*Allen v. United States,*
836 F.3d 894 (8th Cir. 2016)....................................................................17

*Begay v. United States,*
553 U.S. 137 (2008) .............................................................................. 2

*Borden v. United States,*
141 S. Ct. 1817 (2021) ...................................................................... *passim*

*Bourgeois v. Whitley,*
784 F.2d 718 (5th Cir. 1986)...................................................................20

*Brown v. Krueger,*
25 F.4th 526 (7th Cir. 2022)...................................................................11

*Carter v. United States,*
530 U.S. 255 (2000) .............................................................................13

*In re Davenport,*
147 F.3d 605 (7th Cir. 1998)............................................................. 10, 11

*Dean v. United States,*
137 S. Ct. 1170 (2017) ..........................................................................20

*Descamps v. United States,*
570 U.S. 254 (2013) .............................................................................11

*Estell v. United States,*
924 F.3d 1291 (8th Cir. 2019)..................................................................13

*Gardner v. Florida,*
430 U.S. 349 (1977) .............................................................................22

*Holder v. United States,*
539 U.S. 916 (2003)............................................................................. 5

*Holder v. United States,*
577 U.S. 829 (2015) ............................................................................. 6

*Holder v. United States,*
  721 F.3d 979 (8th Cir. 2013) ................................................................... 6

*Holder v. United States,*
  836 F.3d 891 (8th Cir. 2016) ..........................................................6, 7, 18

*Holder v. United States,*
  No. 4:03-CV-00923 ERW, 2008 WL 2909648 (E.D. Mo. Jul. 22, 2008) .................. 6

*Holder v. United States,*
  No. 4:03-CV-00923 ERW, 2009 WL 5030785 (E.D. Mo. Dec. 14, 2009) .................. 6

*James v. United States,*
  476 F.2d 936 (8th Cir. 1973) (per curiam) ................................................20

*James v. United States,*
  550 U.S. 192 (2007) ............................................................................ 6

*Johnson v. Mississippi,*
  486 U.S. 578 (1988)........................................................................ 21, 22

*Johnson v. United States,*
  559 U.S. 133 (2010)...........................................................................2, 12

*Johnson v. United States,*
  576 U.S. 591 (2015) ....................................................................... 2, 6, 7

*King v. United States,*
  965 F.3d 60 (1st Cir. 2020) ................................................................... 3

*Patterson v. State,*
  770 S.E.2d 62 (Ga. App. 2015), *aff'd*, 789 S.E.2d 175 (S. Ct. Ga. 2016)........................14

*Patterson v. State,*
  789 S.E.2d 175 (Ga. App. 2016) ..............................................................14

*Sessions v. Dimaya,*
  138 S. Ct. 1204 (2018)......................................................................... 2

*Somers v. United States,*
  15 F.4th 1049 (11th Cir. 2021)............................................................. 14, 15

*State v. Boner,*
  302 So.3d 131 (La. Ct. App. 4 Cir. 2020)....................................................15

*State v. Lee,*
  321 So.3d 970 (La. Ct. App. 1 Cir. 2021).....................................................15

iv

*Stokeling v. United States,*
  139 S. Ct. 544 (2019)..........................................................................................2

*Sykes v. United States,*
  564 U.S. 1 (2011) ................................................................................................6

*Taylor v. United States,*
  495 U.S. 575 (1990) ......................................................................................2, 11

*United State v. Davis,*
  139 S. Ct. 2319 (2019) .................................................................................2, 3, 7

*United States v. Allen,*
  247 F.3d 741 (8th Cir. 2001)....................................................................5, 18, 19

*United States v. Bates,*
  96 F.3d 964 (7th Cir. 1996) .................................................................................13

*United States v. Carr,*
  761 F.3d 1068 (9th Cir. 2014).............................................................................17

*United States v. Carter,*
  7 F.4th 1039 (11th Cir. 2021) ......................................................................14, 15

*United States v. Durham,*
  645 F.3d 883 (7th Cir. 2011).........................................................................4, 13

*United States v. Garner,*
  28 F.4th 678 (5th Cir. 2022) ...................................................................14, 15, 16

*United States v. Gonzales,*
  No. 21-2022, 2021 WL 3236540 (10th Cir. 2021)........................................... 16

*United States v. Gonzales,*
  No. 21-2022, 2021 WL 4185952 (10th Cir. July 26, 2021) .......................... 16

*United States v. Jackson,*
  — F.3d —, 2022 WL 1160391 (6th Cir. 2022) ............................................. 8

*United States v. Jackson,*
  736 F.3d 953 (10th Cir. 2013)....................................................................... 18

*United States v. McDuffy,*
  890 F.3d 796 (9th Cir. 2018)........................................................... 4, 17, 18, 19

*United States v. Pickar,*
  616 F.3d 821 (8th Cir. 2010).........................................................................4, 13

v

*United States v. Poindexter*,
  44 F.3d 406 (6th Cir. 1995) ................................................................ 18

*United States v. Smith*,
  973 F.2d 603 (8th Cir. 1992) ...............................................................13

*United States v. Toki*,
  23 F.4th 1277 (10th Cir. 2022) .............................................................8

*United States v. Torres-Miguel*,
  701 F.3d 165 (4th Cir. 2012) ................................................................11

*United States v. Vance*,
  764 F.3d 667 (7th Cir. 2014)..........................................................18, 19

*United States v. Walker*,
  919 F.2d 501 (8th Cir. 1990)................................................................ 18

*United States v. Yockel*,
  320 F.3d 818 (8th Cir. 2003) ..................................................... 4, 12, 13

*Voisine v. United States*,
  579 U.S. 686 (2016) ...........................................................................12

*Webster v. Daniels*,
  784 F.3d 1123 (7th Cir. 2015) ............................................................. 10

*Welch v. United States*,
  578 U.S. 120 (2016) ............................................................................ 6

## Constitutional Provisions

U.S. Const., am. V..................................................................................... 5, 6

U.S. Const., am. VIII ............................................................................ 21, 22

## Statutes

18 U.S.C. § 924 .................................................................................. *passim*

18 U.S.C. § 2113 ................................................................................ *passim*

28 U.S.C. § 2241 ...........................................................................1, 9, 10, 11

28 U.S.C. § 2255 ............................................................................... *passim*

U.S.S.G. § 4B1.2.........................................................................................15

Ga. Stat. § 16-5-21 *et seq.* .........................................................................14

La. Rev. Stat. § 14:37.4 ................................................................................................15

N.M. Stat. § 30-3-1 ...................................................................................................... 16

N.M. Stat. § 30-3-2....................................................................................................... 16

**Rules**

Fed. R. Civ. P. 59 ............................................................................................................ 6

**INITIAL STATEMENT REGARDING JURISDICTION**

Petitioner, Norris G. Holder, Jr., through his undersigned counsel, hereby files this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking relief for his illegal conviction under 18 U.S.C. § 924(c). Mr. Holder is a prisoner in the Special Confinement Unit (death row) of the United States Penitentiary at Terre Haute, Indiana, which is located within this District. As explained in detail below, the Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817 (2021), establishes that the conduct underlying Mr. Holder's § 924(c) conviction does not constitute a "crime of violence" as defined by § 924(c)(3)(A), and Mr. Holder is therefore not guilty of the federal crime of using a firearm during or in relation to a "crime of violence." Because *Borden* constitutes a substantive interpretation of federal criminal law, *Borden* applies retroactively to cases on collateral review. However, Mr. Holder has previously sought relief under 28 U.S.C. § 2255 on unrelated grounds. Therefore, the remedy by motion under § 2255 is unavailable to correct his illegal conviction. Accordingly, this Court has jurisdiction over Mr. Holder's habeas petition pursuant to § 2255's savings clause.

**INTRODUCTION AND OVERVIEW OF PETITION**

On March 26, 1998, Norris G. Holder, Jr., was convicted in the Eastern District of Missouri of: one count of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (e) (Count 1); and one count of using or carrying a firearm during and in relation to a crime of violence, specifically, bank robbery as charged in Count 1, in violation of 18 U.S.C. §§ 924(c) and (j) (Count 2). Mr. Holder was sentenced to death on both counts.

At the time of Mr. Holder's trial, § 924(c) contained two alternate definitions of the term "crime of violence:" (1) a narrow definition contained in § 924(c)(3)(A), called

1

the "force" or "elements" clause; and (2) a broader, more nebulous provision contained in §924(c)(3)(B), referred to as the "residual" clause.

The force clause defines a crime of violence as an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. §924(c)(3)(A). It is well settled that courts use the "categorical approach" to determine whether an offense constitutes a crime of violence. *See, e.g., Johnson v. United States*, 576 U.S. 591, 596 (2015). Under the categorical approach, a court determines whether an offense constitutes a crime of violence "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008); *see also Taylor v. United States*, 495 U.S. 575, 599–600 (1990). Thus, if the elements of an offense can be satisfied in any fashion that does not require the use of physical force—regardless of whether force was actually used—the offense cannot be considered a crime of violence under § 924(c)(3)(A).

The Court has clarified that physical force means strong physical force or force capable of causing serious physical injury. *See Johnson v. United States*, 559 U.S. 133, 141–42 (2010); *see also Stokeling v. United States*, 139 S. Ct. 544, 554 (2019) (force must be "sufficient to overcome a victim's resistance"); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1220 (2018) ("[P]hysical force means 'force capable of causing physical injury.'") (quoting *Johnson*, 559 U.S. at 140).

In 2015, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which was substantially similar to § 924(c)'s residual clause, was unconstitutionally vague. *See Johnson*, 576 U.S. at 597. The Court subsequently held in *United State v. Davis*, 139 S. Ct. 2319 (2019), that the residual

clause of § 924(c) was also unconstitutional under the void for vagueness doctrine. *See id.* 2326–27. Pursuant to *Davis*, an offense can only be considered a "crime of violence" under § 924(c) if it meets the stringent definition contained in § 924(c)(3)(A), including the requirements that the crime satisfy the "categorical approach" analysis and that the force element involved be strong physical force.

More recently, the Court clarified that a "crime of violence" also requires the *intent* to use, the *intent* to attempt, or the *intent* to threaten the use of, strong physical force. *See Borden*, 141 S. Ct. at 1830. Therefore, if the "violent" element of a predicate crime can be committed recklessly or accidentally, that crime cannot support a conviction under § 924(c).

A person is guilty of federal bank robbery if he or she:

> [B]y force and violence, or by intimidation, takes or attempts to take, from the person or presence of another, . . . any property or money or any other thing of value, belonging to, or in the care, custody, control, management, or possession of any bank . . . .

18 U.S.C. § 2113(a). Therefore, the least culpable manner in which a person can satisfy the elements of federal bank robbery is by intimidation. The courts have interpreted "intimidation" for purposes of § 2113(a) in a way that does not require the *intentional* use, attempted use, or threatened use of strong physical force.[1] Indeed, both the Seventh and the Eighth Circuits have held that intimidation does not depend on the perpetrator's state of mind at all, but rather on the victim's perception of the perpetrator's conduct.

---

[1] Section 2113(a) also covers taking by extortion. Those courts that have considered the question have concluded that the statute is divisible with respect to extortion, which does *not* require the use, threatened use, or attempted use of strong physical force. *See, e.g., King v. United States*, 965 F.3d 60, 69 (1st Cir. 2020). However, that issue is not necessary for the court to address here.

3

*See United States v. Durham*, 645 F.3d 883, 891 n.1 (7th Cir. 2011); *United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010); *United States v. Yockel*, 320 F.3d 818, 823–24 (8th Cir. 2003). These cases make clear that the only intent required to commit bank robbery by intimidation is the intent to take property that one knows belongs to a banking institution. There is no requirement that the defendant intentionally, purposely, or knowingly threaten harm to another individual.

In addition, § 2113(e)—which makes federal bank robbery eligible for the death penalty—also does not require an intentional *mens rea* as required by *Borden* to qualify as a violent felony. In fact, § 2113(e) carries no independent or additional *mens rea* beyond the intent to commit bank robbery generally. *See, e.g., United States v. McDuffy*, 890 F.3d 796, 801–02 (9th Cir. 2018).

Thus, under the holding in *Borden*, federal bank robbery is not a crime of violence under the force clause, and Mr. Holder's conviction under §§ 924(c) and (j) must be vacated.

## PROCEDURAL HISTORY

### 1.  Conviction and sentencing.

In the Eastern District of Missouri, Case No. 97-cr-00141-ERW, Mr. Holder and a co-defendant, Billie Allen, were jointly charged with bank robbery resulting in death under 18 U.S.C. §§ 2113(a) and (e) (Count 1) and using or carrying a firearm during and in relation to a crime of violence, specifically bank robbery as charged in Count 1, in violation of 18 U.S.C. §§ 924(c) and (j) (Count 2).[2] The Government sought the death

---

[2] A finding of guilt under § 924(c) is a prerequisite for a finding of guilt under § 924(j). Thus, if the conviction for § 924(c) fails, so, too, must the conviction for § 924(j).

4

penalty for both defendants on each Count. Allen's motion to sever was granted and the two men were tried separately.

Allen was tried first and was convicted on both Counts. Although the evidence overwhelmingly proved that Allen alone shot and killed the victim, bank security guard Richard Heflin, and the Government has since conceded this fact, Allen's jury sentenced him to death only on the § 924(c) Count and returned a life sentence on the bank robbery charge.

On March 26, 1998, a separate jury convicted Mr. Holder on both Counts. Mr. Holder's jury subsequently returned death sentences on both Counts. He was formally sentenced to death on July 23, 1998. Mr. Holder has been incarcerated in the Special Confinement Unit at USP-Terre Haute since 1999.

### 2. Direct appeal.

Mr. Holder timely appealed his conviction to the Eighth Circuit on July 23, 1998. Mr. Holder raised several issues on appeal, including that the jury should have been required to find he had a specific intent to kill the victim. The Court of Appeals rejected all of Mr. Holder's arguments and affirmed his convictions and death sentences. *See United States v. Allen*, 247 F.3d 741 (8th Cir. 2001). The United States Supreme Court denied certiorari on June 9, 2003. *See Holder v. United States*, 539 U.S. 916 (2003).

### 3. Initial § 2255 motion.

On June 8, 2004, Mr. Holder timely filed a motion for collateral relief under 28 U.S.C. § 2255. The motion was docketed under Eastern District of Missouri case number 03-cv-00923-ERW.

Mr. Holder's original § 2255 motion asserted that: the Government had failed to allege a statutory aggravating factor in the indictment in violation of the Fifth

Amendment; the jury had improperly considered a statutory aggravator; and trial counsel was ineffective in numerous respects. On July 22, 2008, the district court denied relief. *See Holder v. United States*, No. 4:03-CV-00923 ERW, 2008 WL 2909648 (E.D. Mo. Jul. 22, 2008). The court subsequently denied Mr. Holder's motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e). *See Holder v. United States*, No. 4:03-CV-00923 ERW, 2009 WL 5030785 (E.D. Mo. Dec. 14, 2009). The Eighth Circuit affirmed the denial of relief on appeal. *See Holder v. United States*, 721 F.3d 979 (8th Cir. 2013). On October 5, 2015, the United States Supreme Court again denied certiorari. *See Holder v. United States*, 577 U.S. 829 (2015).

### 4.  *Johnson v. United States* **and first successor § 2255 application.**

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 576 U.S. 591. In *Johnson,* the Supreme Court overruled *Sykes v. United States*, 564 U.S. 1 (2011), and *James v. United States*, 550 U.S. 192 (2007), holding that the ACCA's residual clause was unconstitutionally vague under the Due Process Clause of the Fifth Amendment. Subsequently, the Court held that *Johnson*'s rule is substantive, and therefore applies retroactively to cases on collateral review. *Welch v. United States*, 578 U.S. 120, 134-35 (2016).

On May 13, 2016, Mr. Holder timely sought authorization from the Eighth Circuit to file a successive § 2255 motion. He argued that *Johnson* applied to cases under § 924(c) as well as to cases under the ACCA, and that federal bank robbery under 18 U.S.C. §§ 2113(a) and (e) does not qualify as a categorical "crime of violence" within the meaning of § 924(c), absent the residual clause.

A divided panel of the Eighth Circuit denied authorization. *Holder v. United States*, 836 F.3d 891 (8th Cir. 2016). In their brief opinion, the two-judge majority relied

6

on pre-*Johnson* decisions to hold that a conviction for bank robbery "meets the requirement to include as an element of use, attempted use, or threatened use of physical force against the person or property of another." *Id.* at 892. Writing in dissent, Judge Melloy recognized that Mr. Holder had presented an argument "sufficient to clear the low bar for obtaining permission to file" a successive motion and would have voted to grant the application. *Id.* at 892 (Melloy, J., dissenting).

5.  *United State v. Davis* **and second successor § 2255 application.**

Four years after *Johnson,* the Supreme Court held that the residual clause in 18 U.S.C. § 924(c)(3)(B) is also unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. Mr. Holder again timely sought authorization from the Eighth Circuit to file a second or successive motion pursuant to § 2255 to assert a claim under *Davis*. That court summarily denied his request on December 11, 2019. (8th Cir. Case No. 19-3473).

6.  ***Borden v. United States* holds that a crime of violence requires the intentional or knowing use of force, opening the door to this petition.**

On June 10, 2021, the Supreme Court ruled in *Borden* that "offenses criminalizing reckless conduct" do not qualify as violent felonies within the elements or force clause of the ACCA:

> The phrase "against another," when modifying the "use of force," demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner. Our reading of the relevant text finds support in its context and purpose. The treatment of reckless offenses as "violent felonies" would impose large sentencing enhancements on individuals (for example, reckless drivers) far afield from the "armed career criminals" ACCA addresses—the kind of offenders who, when armed, could well "use [the] gun deliberately to harm a victim."

*Borden*, 141 S. Ct. at 1825 (Kagan, J., plurality op.) (citations omitted)

7

Justice Thomas, concurring, reached the same conclusion. As he explained, "a crime that can be committed through mere recklessness does not have *as an element* the 'use of physical force' because that phrase 'has a well-understood meaning applying only to intentional acts designed to cause harm.'" *Id.* at 1835 (Thomas, J., concurring) (citations omitted) (emphasis added).

Thus, a majority of the Supreme Court agrees on the ultimate conclusion: a conviction cannot qualify as a "violent felony" unless the *mens rea for the violent conduct* is more than recklessness, *e.g.*, it must be intentional.[3]

While *Borden* specifically addressed the *mens rea* requirement for a violent felony under the ACCA, the lower courts have uniformly applied *Borden* to § 924(c) cases, and the Government has conceded that it applies. *See United States v. Jackson*, — F.3d —, 2022 WL 1160391 (6th Cir. 2022) ("The Government does not argue that we should not apply *Borden* to § 924(c) and we see no reason not to do so."); *United States v. Toki*, 23 F.4th 1277, 1281 (10th Cir. 2022) ("[A]fter *Borden*, an offense that can be committed recklessly is not categorically a 'crime of violence' under § 924(c).").

Further, as a substantive decision interpreting the meaning and application of a federal criminal statute, *Borden* applies retroactively to cases on collateral review. *See, e.g.*, *Toki*, 23 F.4th at 1281 ("[A]s the government . . . concedes, the new rule announced by *Borden* applies retroactively.").

Mr. Holder now brings this action less than one year after *Borden* was decided.

---

[3] The Court left open the question whether extreme recklessness suffices for a crime of violence. *Borden*, 141 S. Ct. at 1825 n.4.

**REASONS WHY THE WRIT SHOULD BE GRANTED**

I.    **This Court has jurisdiction under 28 U.S.C. § 2241 because *Borden* establishes that Mr. Holder is innocent of violating § 924(c) and 28 U.S.C. § 2255 is unavailable to correct his illegal conviction and death sentence.**

Mr. Holder invokes this Court's jurisdiction under 28 U.S.C. § 2241, the federal habeas corpus statute. The federal post-conviction relief provision, 28 U.S.C. § 2255(e), provides: "An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained . . . unless . . . the remedy by motion is inadequate or ineffective to test the legality of his detention." This provision is known as the "savings clause."

Section 2255 is unavailable to Mr. Holder—and thus inadequate or ineffective to test the legality of his § 924(c) conviction—because he filed an initial § 2255 motion following his direct appeal nearly 20 years ago. At the time Mr. Holder filed the initial § 2255 motion, circuit law squarely foreclosed the argument that federal bank robbery was not a crime of violence. Moreover, the Supreme Court's decision in *Borden* does not satisfy either of the two narrow grounds permitting a federal prisoner to seek permission to file a successive § 2255 motion. *See* 28 U.S.C. § 2255(h). Specifically, because *Borden* is a statutory interpretation decision and does not announce a new rule of constitutional law, it does not open the door to a successive § 2255 motion under § 2255(h)(2).

In other cases, the Government has conceded that *Borden* opens the door to habeas petitions by way of the savings clause. *See, e.g.*, Government's Response in Opposition to Petition Under 28 U.S.C. § 2241, *Agofsky v. Watson*, No. 2:22-cv-49-JRS-DLP (S.D. Ind.), Doc. 11 at 5 ("The Government agrees that *Borden* applies retroactively

9

to the force clause of § 924(c). Further, had Agofsky raised this claim at trial, appeal, or in his initial motion under § 2255, it would have failed."). In so conceding, the Government apparently recognized that this situation is exactly what the savings clause was designed for: to ensure a meaningful path to relief for a federal prisoner who stands convicted of conduct that the Supreme Court has newly explained is not a federal crime.

The Seventh Circuit has long held that such circumstances open the door to a habeas petition under the savings clause. *See In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998). Savings clause review, the Seventh Circuit has concluded, is available when there is "some kind of structural problem with § 2255" that bars the prisoner from invoking its provisions. *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

Mr. Holder's circumstances are indistinguishable from those in *Davenport*. In that case, the Supreme Court had newly interpreted the statute under which the petitioners were convicted so as to place their conduct outside its reach. When the petitioners had filed their initial § 2255 motions, Circuit precedent foreclosed the claim. And because the new, retroactive decision was statutory and not constitutional, a successive § 2255 motion was unavailable. The Seventh Circuit allowed the prisoners to proceed under the savings clause and § 2241, explaining that denying them any mechanism to remedy imprisonment for a "non-existent offense" would create an "inadequacy of constitutional dimensions." *Davenport*, 147 F.3d at 610–11.

Mr. Holder's case meets all three *Davenport* requirements to proceed under § 2241:

> (1) This petition relies on *Borden,* which announced a new, retroactively applicable statutory interpretation;
>
> (2) Circuit law foreclosed the argument asserted in this petition when Mr. Holder filed his initial § 2255 motion; and

10

(3) under *Borden,* Mr. Holder stands convicted of §§ 924(c) and (j)
for conduct that falls outside the scope of that statute.

As in *Davenport,* denying Mr. Holder any mechanism to pursue relief from his invalid conviction and death sentence would amount to a fundamental miscarriage of justice. *See Brown v. Krueger*, 25 F.4th 526, 528 (7th Cir. 2022). Accordingly, § 2255 is inadequate or ineffective to test the legality of Mr. Holder's conviction, and this Court has jurisdiction over this petition under § 2241.

**II.    In light of *Borden,* Mr. Holder's § 924(c) conviction cannot be sustained because the least culpable way of committing federal bank robbery under §§ 2113(a) and (e) does not require the knowing or purposeful use of, attempted use of, or threat to use strong physical force.**

In applying *Borden* and the Supreme Court's related decisions interpreting § 924(c) to Mr. Holder's case, the bottom-line question is whether federal bank robbery qualifies as a crime of violence under the force clause. In order to answer that question, and thus to determine whether bank robbery under §§ 2113(a) and (e) is a crime of violence, this Court must apply the now-familiar categorical approach. In applying the categorical approach, this Court must "look only to the statutory definitions—i.e., the elements—of [the offense] and not to the particular facts underlying [it]." *Descamps v. United States*, 570 U.S. 254, 261 (2013). In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct it covers, including the most innocent/least culpable conduct, satisfies the force clause. *See, e.g., Taylor*, 495 U.S. at 599–601; *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not include the intentional or knowing use, attempted use, or threatened use of physical force, then the statute does not create a "crime of violence."

11

Even before *Borden,* the Supreme Court recognized that "physical force" means *violent* force—that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. at 140. Under *Borden*, that strong physical force must also be the result of purposeful or knowing conduct; it cannot be the result of recklessness or accident. *See Borden*, 141 S. Ct. at 1826 (the statute must "express[] a kind of directedness or targeting" not involved in reckless conduct); *see also id.* at 1835 (Thomas, J., concurring) (the force clause has "a well-understood meaning applying only to intentional acts designed to cause harm") (quoting *Voisine v. United States*, 579 U.S. 686, 714 (2016) (Thomas, J., dissenting)).

### A.     Bank robbery by intimidation is not a crime of violence.

Federal bank robbery does not satisfy the requirements of a crime of violence after *Borden* because its least culpable means of commission—intimidation—does not require the knowing or purposeful use, attempted use, or threatened use of violent physical force. Both circuits whose laws are relevant to Mr. Holder's petition, the Seventh, the law of which controls in this district, and the Eighth, the law of which controls Mr. Holder's jurisdiction of conviction, have interpreted federal bank robbery under 18 U.S.C. § 2113(a) to require no more than recklessness. Under *Borden*, that precedent compels the conclusion that federal bank robbery is not a crime of violence under § 924(c).

For more than twenty years, the Eighth Circuit has held that § 2113(a) requires no *mens rea* beyond the defendant's conscious awareness he is taking money from a bank. *Yockel*, 320 F.3d at 823. This is a *mens rea* even less culpable than recklessness. Indeed, the Eighth Circuit asks only whether the defendant "knew he was physically taking money." *Yockel*, 320 F.3d at 823–24. If he did, that intent suffices. *See id.*

12

With regard to the *mens rea* required for intimidation, the Eighth Circuit does not ask whether the defendant intended to intimidate anyone. All that matters is whether an "ordinary, reasonable person" would have felt intimidated, not whether the defendant set out to intimidate. *See id.* at 823–24; *see also Estell v. United States*, 924 F.3d 1291, 1293 (8th Cir. 2019) (objectively intimidating behavior constitutes a threat of force regardless of the defendant's *mens rea* because a "'threat,' as commonly defined, speak[s] to what the statement conveys—not to the mental state of the author") (citations and quotations omitted).

The Eighth Circuit has repeatedly confirmed that the defendant's conduct towards others is analyzed under an objective standard. *See, e.g., Pickar*, 616 F.3d at 825; *United States v. Smith*, 973 F.2d 603, 604 (8th Cir. 1992). And the "reasonable person" whose perspective is considered is the victim, not the defendant, which makes clear that the statute does not require the purposeful or knowing use, attempted use, or threatened use of violent physical force.

The Seventh Circuit has also determined that § 2113(a) is satisfied through merely reckless conduct. In a footnote in *United States v. Durham*, the Seventh Circuit characterized § 2113(a) as a general intent crime. 645 F.3d at 891 n.1 (citing *Carter v. United States*, 530 U.S. 255, 269–70 (2000)). Therefore, all that is required to prove a violation of § 2113(a) in this Circuit is that the defendant "consciously and voluntarily [engaged] in the proscribed conduct," e.g., the taking of money. *Id.* (quoting *United States v. Bates*, 96 F.3d 964, 967 (7th Cir. 1996)).

Thus, because bank robbery by intimidation employs an objective standard based on the perception of the victim, it can be committed recklessly, via conduct that while "intentional in one sense" employs no intent to either use or threaten force "directed or

13

targeted at another." *Borden*, 141 S. Ct. at 1833. Bank robbery therefore is not a crime of violence as defined in § 924(c). *See id.*

> **B.    Post-*Borden*, other courts have held and the Government has conceded that crimes requiring only general intent to cause or threaten to cause physical harm are not crimes of violence.**

Two circuits have already applied *Borden* to find that certain statutes cannot constitute crimes of violence because they do not specify an intentional *mens rea* to employ, cause, or threaten physical harm. *See United States v. Garner*, 28 F.4th 678 (5th Cir. 2022); *United States v. Carter*, 7 F.4th 1039 (11th Cir. 2021); *see also Somers v. United States*, 15 F.4th 1049 (11th Cir. 2021). This Court should apply the same reasoning to the federal bank robbery statute here.

In *United States v. Carter* for example, the Eleventh Circuit examined Georgia's aggravated assault statute.[4] *See Carter*, 7 F.4th at 1045. There, the court began with *Borden's* holding, that the force clause "demands that the perpetrator direct his action at, or target, another individual." *Id.* (citing *Borden*, 141 S. Ct. at 1825). Then, the court turned to the underlying state statute, observing that Georgia courts interpret simple assault to require only that "the defendant 'intend[] to do the act that placed another in reasonable apprehension of immediate violent injury.'" *Id.* (quoting *Patterson v. State*, 789 S.E.2d 175, 176–78 (Ga. App. 2016)). Georgia courts also interpret aggravated assault to require no *mens rea* beyond that necessary to commit simple assault. *Id.* (quoting *Patterson v. State*, 770 S.E.2d 62, 66 & n.5 (Ga. App. 2015), *aff'd*, 789 S.E.2d 175 (S. Ct. Ga. 2016)). Accordingly, the Eleventh Circuit concluded that aggravated

---

[4] Ga. Stat. § 16-5-21 *et seq.*

14

assault could be committed recklessly, and thus it could not be considered a violent felony under a proper *Borden* analysis. *Id.*[5]

The Fifth Circuit has adopted a similar approach. In *United States v. Garner*, the Fifth Circuit considered whether Louisiana's aggravated-assault-with-a-firearm statute[6] constitutes a violent felony. *Garner*, 28 F. 4th at 682.[7] Citing Louisiana case law,[8] the Fifth Circuit concluded that aggravated-assault-with-a-firearm could be committed with nothing more than "general intent[.]" *Garner*, 28 F.4th at 682–83. The court also reasoned that because Louisiana's general intent analysis utilizes an "objective approach [that] evaluates the offender's *acts, not his thoughts*, in light of a reasonable-person standard . . . reckless or even negligent states of mind can satisfy Louisiana's general intent standard." *Id.* at 683 (citations and internal quotation omitted). The court

---

[5] In *Somers*, the Eleventh Circuit similarly reviewed Florida's aggravated assault statute. *Somers*, 15 F.4th at 1053. Again, it started with *Borden's* holding: "the elements clause requires both the general intent to volitionally take the action of using . . . force and *something more*: that the defendant direct the action at a target, namely another person." *Id.* (emphasis added). Accordingly, the Eleventh Circuit explained it could only uphold Somers' enhanced sentence "if Florida aggravated assault require[d] a *mens rea* of specific intent to use, attempt to use, or threaten to use physical force against the person of another." *Id.* at 1054, 1056 (certifying that question to the Florida Supreme Court).

[6] La. Rev. Stat. § 14:37.4.

[7] Although the penalty in *Garner* was imposed under the force clause of the United States Sentencing Guidelines, U.S.S.G. § 4B1.2(a), the Fifth Circuit nonetheless applied *Borden. See id.* at 682.

[8] *See State v. Lee*, 321 So.3d 970 (La. Ct. App. 1 Cir. 2021) (where the defendant was convicted for inadvertently firing into the windshield of an SUV as it struck him in his driveway); *State v. Boner*, 302 So.3d 131, 138 (La. Ct. App. 4 Cir. 2020) (where the defendant placed a firearm on top of a piece of furniture with "reckless intent" after battering his partner).

15

concluded that this statute therefore did not create a crime of violence under *Borden*. Inasmuch as the statute "can be committed with 'reckless intent,' or by mere negligence, because the defendant's state of mind is irrelevant . . . [a]nd because aggravated assault with a firearm can be committed with these less culpable states of mind, it is not categorically a crime of violence." *Id*. at 683–84 (citations omitted).

In other cases, the Government has conceded this point. For example, in *United States v. Gonzales*, it acknowledged that a conviction under New Mexico's aggravated-assault-with-a-deadly-weapon statute[9] is not a qualifying offense under the force clause of 18 U.S.C. § 924(e). *See* Appellee's Answer Br., *United States v. Gonzales*, No. 21-2022, 2021 WL 3236540, at *3–4 (10th Cir. 2021). In *Gonzales*, the Government explained that this statute describes a general intent crime that can be violated by "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." *Id*. at *3 (quoting N.M. Stat. § 30-3-1). The Government also acknowledged that "this type of conduct, though intentional in one sense, is not directed or targeted at another." *Id*. at *4 (quoting *Borden*, 141 S. Ct. at 1833). Accepting the Government's concession, the Tenth Circuit vacated the defendant's sentence. *See United States v. Gonzales*, No. 21-2022, 2021 WL 4185952 (10th Cir. July 26, 2021) (unpublished). The Government's brief in *Borden* itself conceded that when Congress passed § 924(c), it "would have been aware that a conviction for robbery could often be premised on proof of reckless . . . causation of

---

[9] N.M. Stat. § 30-3-2(A)

bodily injury." Brief for the United States, *Borden v. United States*, 141 S. Ct. 1817

(2021) (No. 19-5410), 2020 WL 4455245.

> **C.      Section 2113(e) does not require an intentional *mens rea* and can neither serve as an independent crime of violence nor elevate bank robbery to a crime of violence.**

Mr. Holder's conviction unde3r 18 U.S.C. § 2113(e) must also fail under a proper

*Borden* analysis. Because § 2113(a) lacks the necessary *mens rea* and otherwise does not

meet the definition of a crime of violence, § 2113(e), *a priori*, cannot qualify as a crime

of violence under § 924(c)(3)(A) unless it independently requires the qualifying *mens

rea*. It does not.

Section 2113(e) turns on proof of a bank robbery under § 2113(a) or another

section of § 2113 and carries no additional *mens rea* element.[10] Courts have described

subsection (e) as a mere "sentencing enhancement" of bank robbery. *See, e.g.*, *United

States v. McDuffy*, 890 F.3d at 802 ("[Section] 2113(e) is the functional equivalent of

the felony-murder rule but in the form of a sentencing enhancement."); *United States v.

Carr*, 761 F.3d 1068, 1078 n.2 (9th Cir. 2014) (referring to § 2113(e) as a "sentencing

enhancement"); *cf. Allen v. United States*, 836 F.3d 894 (8th Cir. 2016) (determining

---

[10] Section § 2113(e) provides:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

The forced accompaniment clause of this provision is inapplicable here.

that convictions under §§ 2113(a) and (e) are predicates for a "crime of violence" without separating the offenses or treating section (e) as a freestanding offense); *Holder*, 836 F.3d at 892 (same).

As relevant here, subsection (e) requires that, in the course of committing a robbery or eluding apprehension for the offense, the defendant kill a person. Mr. Holder was convicted of § 2113(e) under an aiding and abetting theory because his co-defendant killed a security guard during the bank robbery. This offense contains no scienter requirement other than that required for the underlying bank robbery. *United States v. Jackson*, 736 F.3d 953, 958 (10th Cir. 2013). Thus, courts of appeals, including the Eighth Circuit, have repeatedly found that § 2113(e) does not require proof that the defendant intentionally or knowingly committed the act of killing criminalized by the statute. *See, e.g., Allen*, 247 F.3d at 782 ("Because the plain language of [18 U.S.C. § 2113(e)] says simply 'kills,' and not 'intentionally kills' or 'murders,' the settled principles of construction direct us to conclude that [Congress] did not intend to add an additional scienter requirement to the killing component of the crime." (quoting *United States v. Poindexter*, 44 F.3d 406, 409 (6th Cir. 1995))); *McDuffy*, 890 F.3d at 802 (holding that even an accidental killing in the course of a bank robbery satisfied § 2113(e) and that "Congress intended to omit a *mens rea* requirement" from § 2113(e) because it "makes no mention of a *mens rea* and even describes the killing in the passive voice"); *United States v. Vance*, 764 F.3d 667, 675 (7th Cir. 2014) ("[It is] irrelevant that Vance appears not to have intended to kill the teller in the second bank robbery. . . . It is reasonably clear that the language we quoted from [§ 2113(e)] dispenses with any requirement of proving intent to kill."); *United States v. Walker*, 919 F.2d 501, 502 (8th Cir. 1990) (upholding conviction for forced accompaniment under § 2113(e) where teller

18

drove defendant from crime scene pursuant to an instruction from bank manager to "give a customer a ride" and evidence showed she felt "compelled" to do so, even though defendant "never exhibited the weapon to the teller" or "made any threatening gestures").

Furthermore, numerous other circuits have held that § 2113(e) is the equivalent of a felony murder provision and therefore, like felony murder, has no additional *mens rea* requirement besides the *mens rea* required for the underlying offense. *See, e.g.*, *McDuffy*, 890 F.3d at 802 (holding that "the only *mens rea* required [for conviction under § 2113(e)] is the *mens rea* necessary to commit the underlying bank robbery"); *Vance*, 764 F.3d at 675 (noting that § 2113(e) "duplicates the felony murder rule"); *Allen*, 247 F.3d at 782 (determining that § 2113(e) "is like common law felony murder" and "does not require a finding of specific intent to kill").

Based on the foregoing, § 2113(e) cannot constitute a crime of violence under § 924(c) because there is no additional *mens rea* requirement for § 2113(e), and because the underlying offense of bank robbery pursuant to § 2113(a) does not contain the requisite knowing or purposeful *mens rea*. Accordingly, the fact that Mr. Holder was convicted under § 2113(e) as well as § 2113(a) is irrelevant because neither provision satisfies *Borden's* definition of a "violent felony." Mr. Holder is therefore innocent of violating § 924(c) as he was convicted in Count 2.

### D.    Mr. Holder's death sentences must be vacated.

Mr. Holder was convicted of both bank robbery (Count 1) and violating § 924(c) (Count 2). The jury returned a separate death sentence for each count. After *Borden*, Mr. Holder's death sentence on Count 2 must fall along with his invalid conviction

19

because there cannot be a death sentence under § 924(j) without a crime of violence conviction under § 924(c).

The invalidation of Mr. Holder's § 924(c) conviction requires that he be resentenced on Count 1 as well. When a defendant has been convicted and sentenced on multiple charged offenses, and one charge is subsequently invalidated, the defendant must be resentenced on the remaining valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense. *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986); *see also Dean v. United States*, 137 S. Ct. 1170, 1176 (2017) (acknowledging application of the "sentencing package" doctrine). "[T]he critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that . . . conviction [on another count] was invalid." *James v. United States*, 476 F.2d 936, 937 (8th Cir. 1973) (per curiam). Allowing Mr. Holder's death sentence on Count 1 to stand following the necessary vacatur of his death sentence on Count 2 would violate the Eighth Amendment's protection against cruel and unusual punishment. This is no less true in the case of jury sentencing, and the record in Mr. Holder's case cannot show that the inclusion of the unconstitutional § 924(c) count did not influence the jury's decision to sentence him to death.

Mr. Holder's jury was allowed to consider not just that he participated in a bank robbery in which a death resulted, but that this bank robbery was a "crime of violence." The jury was told that this "crime of violence" was so egregious that using a gun in connection with it amounted to a second federal felony that qualified for a second potential death sentence. And yet, that so-called "crime of violence" was not a crime

20

at all and should never have been presented to the jury during either stage of
Mr. Holder's trial.

The prejudicial impact on the jury of the § 924(c) charge is plainly demonstrated by the result of co-defendant Billie Allen's trial. Though the evidence at his trial proved that Allen alone shot and killed the victim in this case, he received a death sentence only on the § 924(c) count, and a life sentence on the bank robbery count. Whatever the differences between aggravation and mitigation might have been at the two trials, Allen's jury concluded that using a firearm in connection with a "crime of violence" was a more severe crime than the bank robbery alone, and thus worthy of the ultimate punishment. Given that the evidence at both Mr. Allen's and Mr. Holder's trials proved that Mr. Holder did not kill Richard Heflin, there is at least a reasonable probability that the jury's sentencing verdict would have been different, had it been tasked only with determining an appropriate sentence for Mr. Holder for bank robbery in which a death resulted.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Holder's death sentence on Count 1 to stand despite the jury's exposure to the invalid count would implicate the Eighth Amendment. The Supreme Court's decision in *Johnson v. Mississippi*, 486 U.S. 578 (1988), provides an instructive analogy. There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment. The Court explained that "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that

21

death is the appropriate punishment in any capital case." *Id.* at 584 (citations and internal quotations omitted).

Importantly, the Supreme Court in *Johnson v. Mississippi* reasoned that because the petitioner's prior conviction was invalid, it was "apparent that the [prior] conviction provided no legitimate support for the death sentence imposed on petitioner." *Id.* at 585. The Court also specifically held "that the use of that conviction in the sentencing hearing was prejudicial." *Id.* Indeed, while the prosecutor in *Johnson v. Mississippi* had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without express argument, there would be a possibility that the jury's belief the petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida*, 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) conviction had a profoundly prejudicial impact on Mr. Holder's case as a whole and undermines confidence in his death sentence on Count 1 as well. Indeed, Mr. Holder likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Holder, it was presented with an indictment alleging not one, but two capital offenses, including a § 924(c) count. The Department's capital case review process was almost certainly skewed by the presence of the unconstitutional charge, just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

22

Finally, equitable considerations warrant resentencing as well. As noted above, the evidence at both Mr. Holder's trial and that of Billie Allen overwhelmingly proved that Allen alone shot and killed bank security guard Richard Heflin. Yet Allen received a life sentence for his conviction on Count 1, the bank robbery count, and was sentenced to death only on Count 2, the § 924(c) count. If Mr. Holder's § 924(c) conviction is invalid, so is that of Allen. Thus, if this Court vacates only the death sentence associated with Mr. Holder's illegal § 924(c) conviction, he will remain sentenced to death while Allen, the undisputed killer in the case, will no longer face execution.[11] This Court should vacate Mr. Holder's sentence in its entirety and order that he be resentenced on Count 1 alone.

## CONCLUSION

For all the reasons set forth above, Mr. Holder respectfully asks this Court to grant him the writ of habeas corpus, vacate his conviction and sentence on Count 2, and order that he be resentenced for his remaining conviction.

---

[11] The Allen and Holder cases were the first federal death penalty prosecutions brought in the Eastern District of Missouri. Before the co-defendants' separate trials began, the Government apparently indicated that if Allen—who was tried first—received a life sentence, it would take the death penalty off the table in Mr. Holder's case.

23

Dated: May 31, 2022

Respectfully Submitted,

LISA G. PETERS
FEDERAL PUBLIC DEFENDER

By

Nadia Wood,
Assistant Federal Public Defender

Office of Federal Public Defender for the
Eastern District of Arkansas
1401 West Capitol, Suite 490
Little Rock, Arkansas 72201

Phone: (501) 324-6114
Fax: (501) 324-5630
Nadia_Wood@fd.org

*Counsel for Norris G. Holder, Jr.*

24